UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD ALAN KUCERA,<br><br>Defendant. | 3:23-CR-30083-RAL<br><br><br>REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS |

In this child sex trafficking and pornography case, Richard Alan Kucera seeks to suppress his post-arrest statements to FBI agents. Kucera maintains that he made his statements after requesting a lawyer, without a sustainable waiver of his *Miranda* rights, and involuntarily. Because Kucera did not unambiguously invoke his right to counsel, validly waived his rights, and gave voluntary statements, the Court recommends that his suppression motion be denied.

1

## BACKGROUND

At about 7:00 a.m. on August 3, 2023, law enforcement officers arrested Kucera at his home and transported him to the Tripp County Sheriff's Office in Winner, South Dakota.[1] There, roughly 30 minutes later, FBI Special Agents Adam Topping and David Keith interviewed Kucera.[2] After Topping informed Kucera that the interview was being recorded, the following exchange took place:

**Kucera:** Uh huh.

**Topping:** That's just the way things are done. Uh.

**Kucera:** The only thing I got is should I have a lawyer?

**Topping:** Yeah, we'll get to that, one second.

**Kucera:** I mean . . .

**Topping:** What's that?

**Kucera:** Even starting right now? I guess I'm not under . . . Too many, too many TV damn shows.

**Topping:** Yeah. That's what we're gonna go over right now.

**Keith:** He'll read it right from the sheet for you.[3]

Topping then read the *Miranda* advisement to Kucera from a form, a copy of which Topping gave Kucera to read and follow along.[4] When Topping finished, Kucera said he

---

[1] Docket No. 62-2, ¶¶ 1, 2.
[2] *Id.* ¶¶ 2, 3; J. Stip. Ex. 3.
[3] J. Stip. Ex. 3 at 00:00:14-00:00:35.
[4] *Id.* at 00:01:12-00:01:35.

understood his rights and had no questions about them.[5] Kucera agreed to "chat" with agents, stated he knew he could stop and not answer questions at any point, and signed the consent portion of the advice of rights form—affirming that he would answer questions without a lawyer present.[6] Aware of why agents wanted to talk to him ("something with girls"), Kucera spoke to agents for an hour.[7]

A federal grand jury then superseded Kucera's original indictment, charging him with two more counts of sex trafficking of a child and production of child pornography (for a total of six counts—three of each offense).[8] He moved to suppress his statements to Topping and Keith under the Fifth Amendment and the *Miranda* prophylactic rule.[9] The government opposed the motion, requesting that it be denied.[10]

## DISCUSSION

### I.    Request for Counsel

Kucera claims that he invoked his *Miranda* right to counsel when he stated, "The only thing I got, should I have a lawyer? . . . I mean, even starting right now."[11] Having done so, he says, Topping was obliged to immediately discontinue any questioning at

---

[5] *Id.* at 00:01:35-00:01:40.

[6] *Id.* at 00:01:45-00:02:00; J. Stip. Ex. 2.

[7] *See* J. Stip. Ex. 3.

[8] Docket No. 43.

[9] Docket Nos. 48-49.

[10] Docket No. 56.

[11] Docket No. 49 at 3.

that point.[12] The government asserts that Kucera never clearly said he wanted a lawyer or to remain silent and not answer questions.[13]

"Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'"[14] If a suspect's reference to an attorney "is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel . . . the[n] cessation of questioning [is not required]."[15] "Rather, the suspect must unambiguously request counsel."[16] Although the suspect need not "'speak with the discrimination of an Oxford don,' he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."[17] If a suspect's statement is not objectively clear, then "*Edwards*[18] does not require that the officers stop questioning the suspect."[19]

"Of course, when a suspect makes an ambiguous or equivocal statement it will often be good [] practice for the interviewing officer to clarify whether or not he actually

---

[12] *Id.*

[13] Docket No. 56 at 4-5.

[14] *Davis v. United States,* 512 U.S. 452, 459 (1994) (quoting *McNeil v. Wisconsin,* 501 U.S. 171, 178 (1991)).

[15] *Id.*

[16] *Id.*

[17] *Id.* (citation omitted).

[18] *Edwards v. Arizona,* 451 U.S. 477 (1981).

[19] *Id.*

wants an attorney."[20] The Supreme Court, however, has declined to adopt a rule requiring that officers ask clarifying questions, believing instead that such a practice should be permissive and left to the discretion of officers based on the circumstances present.[21]

Kucera's query about whether he "should" have a lawyer at that time was not an unequivocal assertion of his right to counsel.[22] The reference he makes to an attorney is ambiguous and not the clear and present request to consult counsel that is required.[23] He may have been asking for advice about whether to seek counsel, rather than saying he wanted counsel.[24]

---

[20] *Id.* at 461.

[21] *Id.* at 461–62.

[22] *See United States v. Mohr*, 772 F.3d 1143, 1145-46 (8th Cir. 2014) (question and statement, "Should I get a lawyer at this time? . . . I think I should get one," not unequivocal invocation of right to counsel); *United States v. Ellison*, 392 F. App'x 547, 548 (9th Cir. 2010) (defendant's statement "Should I have a lawyer?" not unequivocal request for counsel); *United States v. Alt*, No. 19-CR-10056-JES-JEH, 2021 WL 1714241, at *1-5 (C.D. Ill. Apr. 30, 2021) (defendant did not clearly invoke his right to counsel when he inquired before being *Mirandized*—"Should I have a lawyer?" and then, in a post-*Miranda* question, asked "Do you have a lawyer here?"), *aff'd*, 58 F.4th 910 (7th Cir. 2023), *cert. denied*, 143 S. Ct 1097 (2023); *United States v. Riesselman*, No. CR09-4061-MWB, 2010 WL 1737711, at *3, 5 (N.D. Iowa Mar. 31, 2010) (question "Should I have an attorney present?" did not amount to clear and unequivocal request for assistance of counsel), *report and recommendation adopted*, 708 F. Supp. 2d 797 (N.D. Iowa 2010), *aff'd*, 646 F.3d 1072 (8th Cir. 2011); *Broe v. Warden, Lebanon Corr. Inst.*, No. 1:05 CV 025, 2006 WL 2993410, at *6 (S.D. Ohio Oct. 19, 2006) ("Should I have an attorney?" not "clear and unambiguous request for an attorney"); *see also United States v. Havlik*, 710 F.3d 818, 821-22 (8th Cir. 2013) ("reasonable officer could have understood" defendant's statement, "I don't have a lawyer. I guess I need to get one, don't I?" was "a request for advice about whether to seek counsel, rather than a request for counsel."); *id.* at 822 ("I guess you better get me a lawyer then," not unequivocal request for counsel); *Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001) (concluding "Could I call my lawyer?" not unambiguous invocation of right to counsel).

[23] *See Davis*, 512 U.S. at 459-60; *see also Lord v. Duckworth*, 29 F.3d 1216, 1221 (7th Cir. 1994) (defendant's statement "I can't afford a lawyer but is there any way I can get one?" lacked a clear and "present desire to consult with counsel").

[24] *See Havlik*, 710 F.3d at 821-22 (defendant asking agents whether he needs to get a lawyer could be understood to be request for advice about seeking counsel rather than request for counsel).

Reasonable officers in Topping and Keith's position would have understood only that Kucera *might* be invoking the right to counsel,[25] not that he was straightforwardly doing so. Topping's clarifying response—"Yeah, we'll get to that [in] one second"—and his *Miranda* advisement right afterward supports such an interpretation. Agents likely decided that giving Kucera his *Miranda* rights, orally and in writing, was the best way for Kucera to decide, for sure, whether he wanted counsel. Ultimately, Kucera chose not to exercise any of his rights—including the right to counsel—after being fully apprised of them.[26] At any rate, agents were not required to engage in any clarifying follow-up or, more importantly, stop the interview.[27] They acted well within the bounds of *Miranda* in continuing the interview.[28]

## II.     Voluntariness (Statements and *Miranda* Waiver)

Kucera also claims that agents never responded to his question (about whether he should have a lawyer) and that their failure to do so resulted in an ineffective waiver of his *Miranda* rights and involuntary statements.[29] The government argues that Kucera validly waived his rights and gave voluntary statements.[30] Because the analyses of the waiver and voluntariness issues are interlaced, the Court will address them together.

---

[25] 512 U.S. at 459.

[26] *See* J. Stip. Ex. 3 at 00:01:35-00:02:05.

[27] *See Davis*, 512 U.S. at 459-62; *Havlik*, 710 F.3d at 821-22; *Dormire*, 249 F.3d at 805 n.2.

[28] *See Davis*, 512 U.S. at 462.

[29] Docket No. 49 at 4-6.

[30] Docket No. 56 at 3-4.

The voluntariness of a statement and the validity of a *Miranda* waiver of rights are separate, but parallel, inquiries.[31] Once a court finds that a suspect's statements were voluntary under the Fifth Amendment's Due Process Clause, it follows that the suspect's waiver of his *Miranda* rights was also voluntary.[32] But the flip side is not necessarily true.[33] Even so, the government's burden of proof does not change—it must prove that the suspect's statements and waiver were voluntary by a preponderance of the evidence.[34]

Involuntary statements are not admissible at trial for any purpose.[35] Two factors must be present and work in tandem for a statement to be involuntary: (1) police coercion or overreaching that overbore the suspect's will; and (2) reason to believe that the suspect—because of some physical or mental condition—was susceptible to being prevailed upon.[36] When only one of these two factors is found to exist, the Supreme Court and Eighth Circuit have consistently held that the suspect's statements were voluntary.[37]

---

[31] *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986) ("There is obviously no reason to require more in the way of a 'voluntariness' inquiry in the *Miranda* waiver context than in the . . . confession context."); *United States v. Fast Horse*, CR. 12-30034-RAL, slip op. at 5 (D.S.D. July 24, 2012) (same analysis for voluntariness of suspect's *Miranda* waiver applies in determining whether suspect's statement was voluntary under Fifth Amendment).

[32] *See United States v. Bad Hand*, 926 F. Supp. 891, 899 n.10 (D.S.D. 1996) ("Although *Connelly* arose under the Due Process Clause of the Fourteenth Amendment, whereas the instant case appears to implicate the Fifth Amendment, it has been extended to involuntary confession claims arising under the Fifth Amendment as well.").

[33] *See State v. Tuttle*, 650 N.W.2d 20, 30 (S.D. 2002).

[34] *See Connelly*, 479 U.S. at 169-70.

[35] *See Michigan v. Harvey*, 494 U.S. 344, 351 (1990); *see also Schneckloth*, 412 U.S. at 225-26 (voluntary confession may be used against suspect but involuntary one offends due process).

[36] *See United States v. Anaya*, 715 F. Supp. 2d 916, 949-54 (D.S.D. 2010); *United States v. Klynsma*, No. CR. 08-50145-RHB, 2009 WL 3147790, at *31 (D.S.D. Sept. 29, 2009).

[37] *See, e.g., Connelly*, 479 U.S. at 161, 167 (severe mental illness but no evidence of police coercion or overreaching); *United States v. LeBrun*, 363 F.3d 715, 724-27 (8th Cir. 2004) (en banc) (although ample evidence of police overreaching, suspect did not have particularly susceptible nature or sensibility); *United*

Statements are voluntary if they are "the product of an essentially free and unconstrained choice by [their] maker."[38] A statement is "obtained" involuntarily if police overreaching is the actual moving cause for the statement.[39] In other words, even with police coercion, a statement cannot be held to have been unwilling or forced unless the statement resulted directly from the coercion.[40] "But for causation" is insufficient and "has never been the test for voluntariness."[41]

The record is devoid of evidence that agents coerced or threatened Kucera or that he was susceptible based on some physical or mental condition.[42] Kucera's claim seems to be that agents should have answered his question and clarified that he could have a lawyer present before going on with the interview.[43] But as already discussed, "[t]here is no requirement that an officer must ask clarifying questions when a suspect makes an

---

States v. Astello, 241 F.3d 965, 967-68 (8th Cir. 2001) (same); Thatsaphone v. Weber, 137 F.3d 1041, 1047 (8th Cir. 1998) (no coercion, causing suspect's will to be overborn, either by his lack of English language skills or any other factor); United States v. Makes Room For Them, 49 F.3d 410, 415 (8th Cir. 1995) (no police coercion even though suspect had diminished capacity to resist pressure); see generally 2 Wayne R. LaFave Et. Al., Criminal Procedure § 6.2(c), nn. 186-92 (4th ed. Dec. 2023 Update) (citing Connelly and pointing out that suspect's characteristics can never alone dispose of inquiry into constitutional voluntariness – there must also exist "the crucial element of police overreaching").

[38] Schneckloth, 412 U.S. at 225; see also Colorado v. Spring, 479 U.S. 564, 574 (1987) (suspect's waiver of his Fifth Amendment privilege is voluntary absent evidence that his "will was overborne and his capacity for self-determination critically impaired because of coercive police conduct").

[39] See Hutto v. Ross, 429 U.S. 28, 30 (1976).

[40] See id.

[41] See id.; see also United States v. Leon Guerrero, 847 F.2d 1363, 1366 n.1 (9th Cir. 1988) (citing Schneckloth, 412 U.S. at 224-25) (observing that "[i]f the test was whether a statement would have been made but for the law enforcement conduct, virtually no statement would be deemed voluntary because few people give incriminating statements in the absence of some kind of official action").

[42] See generally J. Stip. Ex. 3; see also Docket Nos. 28 at 3 and 64 at ¶¶ 2, 4.

[43] Docket No. 49 at 4-6.

8

ambiguous statement regarding counsel."[44] Courts "consider the totality of the circumstances"—not one isolated matter—"in determining whether a suspect's waiver or statements were the product of an overborne will."[45]

And the "crucial element" of police overreaching is lacking here.[46] Agents extracted no statements from Kucera through coercion. "Tactics, including claiming not to believe a suspect's explanations do not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne."[47] Kucera's will was not overborne. Kucera said he understood his rights, consented to the interview, signed the advice of rights form, and spoke with the agents for about an hour even after Topping told him he could end the interview whenever he wanted to.[48] The tone and duration of the interview were not coercive.[49] Neither agent engaged in any forceful, threatening, or overbearing conduct that made Kucera's statements involuntary under the Fifth Amendment.[50]

---

[44] *Havlik*, 710 F.3d at 821.

[45] *Id.* at 822 (citing *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 952 (8th Cir. 2001)).

[46] *See Connelly*, 479 U.S. at 163.

[47] *United States v. Magallon*, 984 F.3d 1263, 1284 (8th Cir. 2021) (cleaned up and citation omitted); *see also Jenner v. Smith*, 982 F.2d 329, 332-34 (8th Cir. 1993) (various questioning tactics did not make admissions involuntary).

[48] *See* J. Stip. Ex. 3 at 00:01:35-00:02:45, 00:21:50-00:22:10.

[49] *See generally* J. Stip. Ex. 3; *see also Jenner*, 982 F.2d at 332-34 (six-hour interview did not render confession involuntary); *Makes Room For Them*, 49 F.3d at 415 (two-and-a-half-hour interrogation not coercive).

[50] *See Connelly*, 479 U.S. at 164-67.

Kucera appeared to understand agents' questions and responded to many of them in detail.[51] He appropriately answered the questions posed to him[52] and vividly described the trysts he had[53] and the pornography he watched.[54] Twenty minutes into the interview, while talking about his sexual rendezvous, Kucera stated that he tried to make sure he knew how old the females were.[55] Kucera then stated he probably should not have said that but that he "was talking freely with [agents]."[56] When informed he did not have to keep talking with agents,[57] Kucera reiterated that he understood he could terminate the interview at his leisure.[58]

Because agents did not take any action that could objectively be considered coercive or overreaching and Kucera did not have a condition that made him overly susceptible to persuasion, there is nothing to refute the voluntariness of his statements. Due process protects Kucera's from being compelled to make statements against his will; it goes no further than that.[59] Kucera's statements were voluntary. Applying the same analysis, his *Miranda* waiver was likewise voluntary, as well as knowing and intelligent,

---

[51] *See generally* J. Stip. Ex. 3.
[52] *See generally id.*
[53] *See id.* at 00:11:00-00:32:30.
[54] *See id.* at 00:35:00-00:41:00.
[55] *Id.* at 00:21:40-00:21:45.
[56] *Id.* at 00:21:45-00:21:53.
[57] *Id.* at 00:21:55-00:22:05.
[58] *Id.*
[59] *See Connelly*, 479 U.S. at 163-67, 169-70; *see also Spring*, 479 U.S. at 573-74 (statement not compelled under the Fifth Amendment if suspect voluntarily, knowingly, and intelligently waives his constitutional privilege).

and hence enforceable against him. Having carried its burden, the government may use Kucera's statements as substantive evidence at trial.

## CONCLUSION

Kucera's references to a lawyer did not amount to an unequivocal request for counsel. His questions, "Should I have a lawyer? . . . Even starting right now?" were not clear expressions of a desire to have counsel present to assist him.

The statements Kucera made to agents were voluntary and given after a valid waiver of his *Miranda* rights. No one coerced him to forgo his rights and confess.

In the end, Kucera's statements are admissible, under *Miranda* and the Fifth Amendment, and may be used against him in the government's case-in-chief.

## RECOMMENDATION

In accordance with the authorities and legal analysis set forth in this report, and the record now before the Court, it is

RECOMMENDED that Kucera's motion to suppress statements[60] be denied.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to object to the same.[61] Unless an extension of time for cause is later obtained,[62] failure to

---

[60] Docket No. 48.
[61] *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).
[62] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (citing *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

file timely objections will result in the waiver of the right to appeal questions of fact.[63]

Objections must "identify[] those issues on which further review is desired[.]"[64]

DATED this 13th day of February, 2024.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[63] *See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.
[64] *Arn*, 474 U.S. at 155.

12