UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD ALAN KUCERA,<br><br>Defendant. | 3:23-CR-30083-1-RAL<br><br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS |

Defendant Richard Alan Kucera moves to suppress post-arrest statements he made to FBI agents during a custodial interrogation, arguing that (1) he was not provided an attorney after requesting counsel, (2) he did not voluntarily and intelligently waive his Miranda rights, and (3) his statements to law enforcement were involuntary. For the reasons below, this Court denies Defendant's motion to suppress and adopts the Report and Recommendation for Disposition of Motion to Suppress. Doc. 67.

I.  **Factual and Procedural Background**

On August 1, 2023, Kucera was indicted for sex trafficking a child and production of child pornography.[1] Doc. 1. Two days later, law enforcement officers arrested Kucera at his residence in Winner, South Dakota, and transported him to the Tripp County Sherriff's Office. Doc. 64 at 1. Once at the Sherriff's office, Federal Bureau of Investigation (FBI) Special Agents Adam

---

[1] The Indictment was later superseded and Kucera was charged with additional counts of sex trafficking a child and production of child pornography. Doc. 43.

1

Topping and Dave Keith interviewed Kucera. The parties agree that Kucera was in custody during the interview, but he was not handcuffed or otherwise restrained. <u>See</u> Doc. 64 at 2. The entire interview was electronically recorded. The interview began as follows:

> **Richard Kucera:** Uh huh.
>
> **Agent Adam Topping:** That's just the way things are done. Uh.
>
> **Richard Kucera:** The only thing I got is should I have a lawyer?
>
> **Agent Adam Topping:** Yeah, we'll get to that one second.
>
> **Richard Kucera:** I mean . . .
>
> **Agent Adam Topping:** What's that?
>
> **Richard Kucera:** Even starting right now? I guess I'm not under [. . .] Too many, too many TV dam [sic] shows.
>
> **Agent Adam Topping:** Yeah. That's what we're going to go over right now.
>
> **Agent David Keith:** He'll read it right from the sheet for you.
>
> **Agent Adam Topping:** So uh, Richard Alan Kucera.
>
> **Richard Kucera:** Yep.
>
> **Agent Adam Topping:** Are you a Junior?
>
> **Richard Kucera:** No.
>
> **Agent Adam Topping:** Okay. Alright. I wasn't sure about that.
>
> **Richard Kucera:** Yep.
>
> **Agent Adam Topping:** So you are under arrest.
>
> **Richard Kucera:** Okay.
>
> **Agent Adam Topping:** We have an arrest for you okay? So, because you're under arrest, you are considered under our custody.
>
> **Richard Kucera:** Okay.
>
> **Agent Adam Topping:** And before we can ask you any questions, we have to go over your rights.
>
> **Richard Kucera:** Yep.
>
> **Agent Adam Topping:** Okay. Um, so right now we are at the Tripp County Sherriff's Office, in Winner, South Dakota. It is August 3rd, 2023. It's 7:45 a.m. I'll let you read this while I, while I read it for you. So before we ask you any

2

questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during the questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time. Do you understand all those?

**Richard Kucera:** Yep.

**Agent Adam Topping:** Do you have any questions about any of that?

**Richard Kucera:** No.

**Agent Adam Topping:** Okay, uh, giv[en] that your rights have been read to you, do you want to sit here and chat with us?

**Richard Kucera:** Uh yeah.

**Agent Adam Topping:** And you can like the last one says if it gets to a point where . . .

**Richard Kucera:** Yeah.

**Agent Adam Topping:** . . . and you want to stop . . .

**Richard Kucera:** Yep.

**Agent Adam Topping:** . . . answering questions, you have that right . . .

**Richard Kucera:** Yep.

**Agent Adam Topping:** . . . just tell us and . . .

**Richard Kucera:** I understand that.

**Agent Adam Topping:** . . . we'll call it done. Okay?

**Richard Kucera:** Yep.

**Agent Adam Topping:** Alright. Let's uh, uh, . . . Winner, 8-3-23, 7:45 am. Alright, I'll just have you sign right here. Alright. Okay, 7:47. Okay. Uh, do you want to be called Rick, Richard, Kooch?

**Richard Kucera:** Kooch.

**Agent Adam Topping:** Kooch, okay, that's easy for me. That's kind of how I know you as. Do you know why, do you have any thoughts about why we're here to talk to you?

3

**Richard Kucera:** Some, something with girls.

Exhibit 3; Doc. 56-1.

After signing the FBI's "Advice of Rights" form, which states, "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present," Kucera proceeded to make incriminating statements during his interview with Special Agents Adam Topping and David Keith. Kucera now moves to suppress the interview, arguing that he was not provided an attorney after requesting one, that he did not knowingly and intelligently waive his Miranda rights, and that his statements were involuntary. Doc. 48. Magistrate Judge Mark A. Moreno issued a Report and Recommendation on Defendant's Motion to Suppress, recommending this Court deny the motion. Doc. 67. Kucera objected to the recommendation and asked this Court to review his motion de novo. Doc. 68.

## II. Standard of Review

A United States Magistrate Judge considering a dispositive motion, such as a motion to suppress evidence, makes proposed findings of fact and a recommendation as to the disposition of the motion in the form of a report and recommendation. Fed. R. Crim. P. 59(b)(1). Either "party may serve and file *specific written objections* to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2) (emphasis added). When one of the parties timely files written objections to a magistrate judge's report and recommendation, the district court judge must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see Fed. R. Crim. P. 59(b)(3); H.R. Rep. No. 94-1609, 94th Cong., 2nd Sess., at 6153 (amending 28 U.S.C. § 636(b) to clarify when a judge must review a recommendation de novo and specifying "that the district judge in making the ultimate determination of the matter, would have to give fresh consideration *to those issues to which specific objections [have] been made* by a party" (emphasis added)). The district judge "may accept, reject,

4

or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Defendant's objections are neither specific nor made as to specific portions of the report and recommendation. Rather, Defendant broadly "requests that this court make its own, de novo review of the record and determination of the issues presented within the report and recommendation." Doc. 68 at 1. At base, Defendant asks this Court to review anew the issues raised and argued before the magistrate judge without explaining how or why the magistrate judge erred.[2] General, perfunctory objections of this nature treat the magistrate judge's report and recommendation as a mere dress rehearsal. Franklin v. Liberty Mut. Ins. Co., No. 08 Civ. 7120, 2011 U.S. Dist. LEXIS 12877, at *3 (S.D.N.Y Feb. 9, 2011) ("[O]bjections that are merely perfunctory responses argued in an attempt to engage the district court in rehashing [] the same arguments set forth in the original [motion] will not suffice to invoke de novo review of the magistrate's recommendations." (cleaned up and citation omitted)). That is not the type of practice Congress had in mind when it passed the Federal Magistrates Act, which sought to promote efficiency within our courts. Pub. L. 94-577, 90 Stat. 2729 (Oct. 21, 1976) (described as "[a]n Act to improve judicial machinery"); See also Wingo v. Wedding, 418 U.S. 461, 475–76 (1974) (Burger, J., dissenting) (stating that the Federal Magistrate Act was "intended . . . to cull from the

---

[2] Rather than explaining how or why the Report and Recommendation was erroneous, defense counsel simply copied the argument and authorities' section from his Memorandum in Support of Motion to Suppress Statements and pasted it word for word into his Objections to Report and Recommendation for Disposition of Motion to Suppress. Compare Doc. 49 at 2–6 with Doc. 68 at 1–5. Based on identical typographical errors appearing in both documents, it appears defense counsel did not care to even reread his argument after copying and pasting it from his prior submission. Compare Doc. 49 at 4, 5 with Doc. 68 at 3, 4. Indeed, defense counsel's Objections to Report and Recommendation contains the same stray reference to someone named "Brown" as did his original memorandum submitted to the magistrate judge. Compare Doc. 68 at 2 with Doc. 49 at 3.

5

ever-growing workload of the U.S. district courts matters that are more desirably performed by [other] judicial officers" and "to provide district judges with more time to devote to the actual trial of cases and the writing of opinions" (cleaned up and citations omitted)). Nevertheless, in making the ultimate determination on Defendant's motion, this Court reviews the issues raised de novo.

### III. Discussion

#### A. Request for Counsel

The Fifth Amendment to the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To give this right full effect, the Supreme Court of the United States held in Miranda v. Arizona, 384 U.S. 436, 478–79 (1966), that a suspect under custodial interrogation "must be adequately and effectively apprised of his rights," which includes the right to remain silent and the right to an attorney, "and the exercise of those rights must be fully honored." Missouri v. Seibert, 542 U.S. 600, 608 (2004) (quoting Miranda, 384 U.S. at 467). A defendant's "right to have counsel present at [the custodial] interrogation is indispensable to the protection of the Fifth Amendment" privilege against compelled self-incrimination. Fare v. Michael C., 442 U.S. 707, 719 (1979). Accordingly, if a defendant requests counsel at any point during a custodial interview, all questioning must cease "until a lawyer has been made available or the [defendant] himself reinitiates conversation." Davis v. United States, 512 U.S. 452, 458 (1994). To invoke this right, a defendant "must unambiguously request counsel." Id. at 459 (holding that "maybe I should talk to a lawyer" is not an unambiguous request for counsel); United States v. Kelly, 329 F.3d 624, 630 (8th Cir. 2003) (stating that "do you know any good attorneys" was not an unequivocal request for the assistance of counsel and reiterating "that only a *clear and unequivocal* request for the assistance of counsel may serve to invoke a defendant's right" (emphasis added)). A defendant's request for counsel "is ambiguous

6

or equivocal [when] a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." Davis, 512 U.S. at 459.

Kucera contends that by inquiring, "should I have a lawyer" to Agent Topping, he invoked his right to counsel, thereby ending the interview. But Kucera's remark was a question and not an unequivocal invocation of his right to counsel. See United States v. Ellison, 392 F. App'x 547, 548 (9th Cir. 2010) (unpublished) ("should I have a lawyer" "was not an unequivocal request for counsel"); see also United States v. Hunter, 708 F.3d 938, 944 (7th Cir. 2013) ("'should' is 'used to . . . ask advice or suggestions'"). A question by its nature asserts nothing. Instead, it seeks a response. Also, Agent Topping's response acknowledging Kucera's question and informing him that they would address that topic momentarily was appropriate under the circumstances. Agent Topping prudently deferred answering Kucera's question and then advised Kucera of the full panoply of his Miranda rights, at which point Kucera had no questions and indicated, both orally and in writing, that he understood his rights. Thus, Kucera did not unequivocally invoke his right to counsel, and Agent Topping had no obligation to construe Kucera's question as an invocation.

### B. Waiver of Miranda Rights and Voluntariness

Kucera also argues that he did not voluntarily, knowingly, and intelligently waive his Miranda rights or voluntarily make a statement. If a defendant subject to a custodial interrogation "makes a knowing and voluntary waiver of his Fifth Amendment rights after receiving his Miranda warnings," his statements to law enforcement are admissible at trial. United States v. Rooney, 63 F.4th 1160, 1167 (8th Cir. 2023). It is the United States's burden to prove that a defendant's waiver of his Miranda rights was voluntary, knowing, and intelligent. See United States v. Caldwell, 954 F.2d 496, 505 (8th Cir. 1992). This Court employs a two-factor inquiry to determine whether a defendant effectively waived his Miranda rights. "First, the waiver 'must

7

have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" Rooney, 63 F.4th 1160, 1168 (8th Cir. 2023) (quoting United States v. Vinton, 631 F.3d 476, 483 (8th Cir. 2011)). "Second, the suspect must have waived his rights with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. (cleaned up and citation omitted). A suspect "can validly waive his rights orally or in writing." United States v. Woods, 829 F.3d 675, 680 (8th Cir. 2016); see also Martin v. United States, 691 F.2d 1235, 1239 (8th Cir. 1982) (upholding a waiver as valid when defendant was advised of his Miranda rights, acknowledged understanding, and answered interviewing officer's questions, despite defendant's refusal to sign a waiver form). If the totality of the circumstances of a defendant's waiver illustrates "both an uncoerced choice and the requisite level of comprehension," the waiver will be valid. Moran v. Burbine, 475 U.S. 412, 421 (1986).

The totality of the circumstances here show that Kucera's waiver was voluntary, knowing, and intelligent and that he voluntarily made statements to law enforcement. As to voluntariness, "in considering whether a confession was voluntary, the determinative question is whether the confession was extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-determination was critically impaired." United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998). Without evidence of coercive police conduct, a defendant's waiver of Miranda rights and any statements made thereafter will be considered voluntary. See Colorado v. Spring, 479 U.S. 564, 574 (1987). A statement is involuntary only if extracted by coercive police conduct. United States v. Goudreau, 854 F.2d 1097, 1099 (8th Cir. 1988) ("Coercive official activity is a necessary predicate to a finding that a statement is not voluntary."). Thus, a waiver of Miranda rights and "[a]n

8

incriminating statement is not involuntary unless extorted from the accused by means of coercive activity." Id.

The record lacks any evidence of coercion, deception, or intimidation. Based on this Court's review, Kucera appears to be mentally sound; there is no evidence or argument of intoxication, and Kucera does not claim to suffer any mental or physical disability that made him unduly susceptible to police overreach or diminished his capacity for self-determination. Accordingly, this Court finds that Kucera's Miranda waiver and statements to law enforcement were both voluntary.

As to the second part of the inquiry, whether Kucera's waiver was knowing and intelligent, "[a] waiver is 'knowing and intelligent' [when] it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right." Thai v. Mapes, 412 F.3d 970, 977 (8th Cir. 2005). Whether a waiver was knowing and intelligent is an issue independent of the voluntariness inquiry. See Rooney, 63 F.4th at 1168 (the inquiries are of "two distinct dimensions"). Generally, a defendant "who is admonished with the warnings prescribed by th[e] Court in Miranda has been sufficiently appraised of the nature of his [Fifth and] Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." United States v. Garlewicz, 493 F.3d 933, 936 (8th Cir. 2007) (quoting Patterson v. Illinois, 487 U.S. 285, 296 (1988)). And "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver." North Carolina v. Butler, 441 U.S. 369, 373 (1979). See Berghuis v. Thompkins, 560 U.S. 370, 381 (2010) (explaining that when a suspect understands his rights, "it follows that he knew what he gave up when he spoke"); United States v. Gayekpar, 678 F.3d 629, 634, 639 (8th Cir. 2012) (holding that waiver was knowing and intelligent where

9

police read defendant his rights, defendant orally acknowledged that he understood them, and signed a form waiving his rights and agreeing to be interviewed); see also United States v. Brave Hawk, No. 15-CR-30090, 2016 U.S. Dist. LEXIS 8575, at *8 (D.S.D. Jan. 26, 2016) (same).

Here Special Agent Topping fully and accurately read Kucera his Miranda rights from the FBI's standard "Advice of Rights" form, which details a suspect's rights in plain and simple English and further instructs a suspect that they "must understand their rights." After he finished reading the advice of rights, Agent Topping asked Kucera if he had any questions about his rights, to which Kucera answered, "No." Based on the record before this Court, Kucera appeared willing to cooperate with law enforcement and answer their questions; he signed the "Advice of Rights" form, reflecting that he read and understood the nature of his rights and the consequences of waiving those rights. Consequently, he consented to talking with the special agents without a lawyer present, knowing that "anything [he] say[s] can be used against him in court." And he explicitly stated (as well as reflected in writing) that he understood he could assert his rights at any time, even after answering questions initially.

"Once it is determined that a [defendant's] decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the [United States'] intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." Garlewicz, 493 F.3d at 936 (quoting Patterson, 487 U.S. at 296). Accordingly, this Court agrees with the Report and Recommendation; Kucera knowingly and intelligently waiver his Miranda rights and made statements to law enforcement fully aware of the potential consequences.

**IV.   Conclusion**

For the aforementioned reasons, it is hereby

ORDERED that Defendant Richard Alan Kucera's objections to the Report and Recommendation, Doc. 68, are overruled, and the Report and Recommendation, Doc. 67, is adopted. It is further

ORDERED that Defendant Richard Alan Kucera's Motion to Suppress, Doc. 48, is denied.

DATED this 9th day of July, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE